Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000569
18-OCT-2016
08:30 AM

NO. CAAP-15-0000569

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ALBERT BATALONA, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE CIRCUIT CIRCUIT
(SPECIAL PROCEEDING PRISONER NO. 10-1-0096
(CRIMINAL NO. 99-1549))

MEMORANDUM OPINION
(By:  Foley, Presiding J., Leonard and Reifurth, JJ.)

Petitioner-Appellant pro se Albert Batalona (**Batalona**) appeals from the "Findings of Fact, Conclusions of Law, and Order Denying Petition for Post-Conviction Relief Without a Hearing" (**FOF/COL/Order**) entered July 1, 2015 in the Circuit Court of the First Circuit[1] (**circuit court**).  The circuit court denied Batalona's December 8, 2010 "Petition for Post-Conviction Relief," brought under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40 (**Rule 40 Petition**), without a hearing.

## I. INTRODUCTION

On appeal, Batalona argues the circuit court erred in denying his Rule 40 Petition without a hearing because he was deprived of effective assistance of counsel by David Klein (**Klein**),[2] who represented him at trial and his October 23, 2000

---

[1]  The Honorable Collette Y. Garibaldi issued the FOF/COL/Order.

[2]  Specifically, Batalona argues that Klein failed to do the following:

(continued...)

[2](...continued)

1. challenge the circuit court's erroneous refusal to dismiss jurors and prospective jurors for cause;

2. raise claims of delay and the circuit court's failure to "guide" the jury regarding "included offense," despite the jury's request for clarification;

3. challenge the grand jury proceedings, which were held while proceedings against him in federal court, stemming from the same facts, were pending;

4. raise violations of Hawaii Revised Statutes (HRS) § 701-109(1)(a) [(2014 Repl.)] and/or double jeopardy regarding his conviction on the use of a firearm in the commission of a separate felony, attempted robbery in the first degree (**Robbery 1**), and prohibited firearm;

5. challenge the circuit court's failure to instruct the jury to find Batalona guilty of only attempted murder in the first degree (**Attempted Murder 1**) if they found the offense was committed concurrently with Robbery 1;

6. challenge the joinder of two separate offenses in the same count;

7. raise that the circuit court violated or interfered with Batalona's right to "participate in his own defense" by preventing him from accessing discovery materials;

8. show that [Respondent-Appellee State of Hawaiʻi's (**State**)] decision to prosecute him and not his co-defendants, when the federal court still had jurisdiction over him, was relevant;

9. challenge the State's decision to prosecute him and not his co-defendants, prior to trial;

10. challenge the State's introduction of perjured testimony;

11. challenge the introduction of an AR-15 gun clip as evidence on the basis of evidence-tampering, unreliability, and unorthodox recovery;

12. challenge the jury instructions on Attempted Murder 1;

13. object to the jury instructions on "proof beyond a reasonable doubt";

14. challenge the circuit court's refusal to instruct the jury on the lesser-included offense of assault against a police officer, despite the existence of a rational basis in the evidence;

15. raise matters of critical importance to Batalona's defense, such as the admission of prejudicial evidence and failure to call an expert witness;

16. contest jury instructions on criminal attempt and attempted murder;

17. present evidence of a highly exculpatory nexus between two exhibits; and

(continued...)

2

appeal (**2000 Appeal**) to the Hawaiʻi Supreme Court (case no. 23820)  Further, Batalona argues that

(1)  the circuit court interfered with his right to access discovery materials and, thus, prevented him from intelligently preparing and filing state and federal post-conviction petitions;

(2)  his sentence to life in prison without parole was cruel and unusual and outside of the court's discretion, and should have been commuted; and

(3)  the court committed a manifest injustice, where errors or omissions precluded Batalona from receiving the sentence in Count 2 that he would have been entitled to on retrial.

Batalona concedes the circuit court did not err in denying his request for post-conviction relief on Grounds 11 and 12 of his Rule 40 Petition.

This court vacates the FOF/COL/Order and remands this case for a hearing on Ground 1 and Ground 20(F) in Batalona's Rule 40 Petition, and affirms the circuit court's denial of a hearing on the other twenty-one separate grounds, as well as the other subparts of Ground 20 in Batalona's Rule 40 Petition in that they are "patently frivolous and [are] without a trace of support either in the record or from other evidence submitted by [Batalona]."  HRPP Rule 40(f).

## II.  GROUND ONE

In his Rule 40 Petition, Batalona asserted multiple ineffective assistance of counsel claims.  In Conclusions of Law 4, the circuit court collectively denied a hearing on these claims, under State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980), after finding that these claims were patently

---

[2](...continued)

18. present exculpatory evidence showing that he was inside the bank when the shots were fired at the police officer, outside.

Batalona also argues that Klein was ineffective for erroneously advising him to not testify at trial.

frivolous and without a trace of support, under HRPP 40(f) and Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994); that Batalona failed to point to any specific errors or omissions resulting from Klein's lack of skill, judgment, or diligence; and that Batalona's general claims were insufficient.

Klein represented Batalona at trial and the 2000 Appeal. "Where [a] petitioner has been represented by the same counsel both at trial and on direct appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal." Briones v. State, 74 Haw. 442, 459, 848 P.2d 966, 975 (1993). The petitioner has the burden to show that counsel's assistance was ineffective. Id. at 460, 848 P.2d at 975.

In Briones, the Hawai'i Supreme Court stated:

> In any claim of ineffective assistance of trial counsel, the burden is upon the defendant to demonstrate that, in light of all the circumstances, counsel's performance was not objectively reasonable—i.e., within the range of competence demanded of attorneys in criminal cases. In [Antone], we set forth a two-part test requiring defendant to show specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence, and that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. An accused's potentially meritorious defenses include the assertion of his constitutional rights.
>
> General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for benefitting the defendant's case will not be subject to further scrutiny. If, however, the action or omission had no obvious basis for benefitting defendant's case and it resulted in the withdrawal or substantial impairment of a potentially meritorious defense, then the knowledge held and investigation performed by counsel in pursuit of an informed decision will be evaluated as that information that, in light of the complexity of the law and the factual circumstances, an ordinarily competent criminal attorney should have had. An informed, tactical decision will rarely be second-guessed by judicial hindsight. If the record is unclear or void as to the basis for counsel's actions, counsel shall be given the opportunity to explain his or her actions in an appropriate proceeding before the trial court judge.

74 Haw. at 463, 848 P.2d at 976-77 (citations, internal quotation marks, parentheticals, brackets, ellipsis, and emphasis omitted).

In Ground 1, Batalona argued that Klein failed to challenge the circuit court's failure to dismiss multiple jurors

4

and prospective jurors for cause. He appeared to argue that the following nine members of the jury pool showed bias in favor of law enforcement and/or victims: Dumaoal, Wei, Chun, Sereno, Stone, Lopes, Fischer, Ka'alele, and Nakama.

Prior to jury selection, Dumaoal, Wei, Chun, Sereno, Stone, Lopes, and Fischer each filled out a jury qualification questionnaire and answered "Yes" to the question, "Are you related to, or close friends with any law enforcement officer?" In his Rule 40 Petition, Batalona appeared to assert that he used two of his four peremptory challenges to remove two of those seven jurors and would have used the rest to remove two more of the seven jurors, but Klein used them to remove Ka'alele and Nakama. Ka'alele and Nakama did not indicate on the jury questionnaire form that they were related to or close friends with an officer but, according to Batalona, seemed to be partial to law enforcement and/or victims based on what they said during voir dire.

At voir dire, the circuit court engaged Nakama in the following exchange:

> [circuit court:] Miss Nakama, good morning. Can you tell us what you remember reading, hearing or seeing about the case in the news?
>
> [Nakama:] That there was an armed robbery involving guns and it was frightening because it was in my neighborhood and there was shooting. And the suspects got away and that they were caught, I don't know whether several days later or a week later, and that one or two of them might have been in the Kaimuki area.
>
> [circuit court:] I will be instructing you and other jurors that you can only decide the case on the evidence that's presented in the courtroom and that outside information cannot be used, that if you have any opinions they have to be set aside and you have to start fresh on the case. Would you be able to do that or would you be affected or influenced by outside information or your own personal reaction to the case?
>
> [Nakama:] Truthfully, I think I would be more affected by the information I've read and my -- my feelings.
>
> [circuit court:] Would you be able to set that aside or would you have problems?
>
> [Nakama:] I hope to be able to.

\* \* \*

5

[circuit court:] All right. You . . . said it was a frightening experience because it was in my neighborhood?

[Nakama:] Yes. My husband does banking there and the girls and I are there a lot, we walk around the area.

[circuit court:] So your family through your husband?

[Nakama:] We use the one in Kahala but he takes money out of there also.

[circuit court:] Have you and he discussed the case at all to such an extent that you have expressed an opinion or have expressed your feelings to him about what happened?

[Nakama:] Gosh, that was last year. I know we both felt that it was a frightening experience to have guns in our neighborhood that, you know, our daughters could be hurt and other families, too. But that was last year, we haven't discussed it since then.

[circuit court:] . . . .

Would you be able to concentrate on focus your attention only on courtroom evidence?

[Nakama:] Well, if I do serve as a juror, I hope to.

Klein questioned Nakama as follows:

[Klein:] You are of course aware that there were guns involved?

[Nakama:] Oh, yes.

[Klein:] You were aware that shots had been fired?

[Nakama:] Yes.

[Klein:] And you heard [Batalona's] name mentioned in connection with that?

[Nakama:] Yes.

[Klein:] The fact that you would be called to sit as a juror in this case and to decide . . . the question is whether or not based upon how you felt at the time and what you had learned, do you think you could be fair to [Batalona]?

[Nakama:] Well, I hope so.

[Klein:] Okay. So you're -- you feel confident that you can, you can put that aside?

[Nakama:] You know, to be truthful, as a mother and a wife I have really strong feelings already. I feel show me the facts to prove that this man is innocent.

During voir dire, Ka'alele stated that she had been working for two years as a clerk-typist for the Honolulu Police Department Vehicle Maintenance Division. She had no personal contact with any police officers or personnel, other than to speak to them about car maintenance and repairs, and would have

6

no problem judging the credibility of the officers who testified at trial.

In <u>State v. Carvalho</u>, 79 Hawai'i 165, 880 P.2d 217, (App. 1994), this court stated:

> There are two kinds of challenges to jurors: "for cause" and peremptory. "In all cases, any party may challenge for cause any juror drawn for the trial." [HRS § 635-28 (1993)]. "For cause" includes challenges to the "juror's qualifications, interest, or bias that would affect the trial of the cause and . . . to any matter that might tend to affect the proposed juror's verdict." HRS § 635-27 [(1993)]. A peremptory challenge is "the right to challenge a juror without assigning, or being required to assign, a reason for the challenge." Black's Law Dictionary 1136 (6th ed. 1990).

<u>Id.</u> 79 Hawai'i at 170 n.4, 880 P.2d at 222 n.4 (brackets omitted).

"The paramount question in determining whether to excuse for cause a prospective juror is whether the defendant would be afforded a fair and impartial trial based on the law and evidence, with the prospective juror as a member of the jury." <u>State v. Iuli</u>, 101 Hawai'i 196, 203, 65 P.3d 143, 150 (2003) (citation and internal quotation marks omitted).

The Hawai'i Supreme Court has stated:

> [W]hen a juror is challenged on grounds that he has formed an opinion and cannot be impartial, the test is whether the nature and strength of the opinion are such as in law necessarily raise the presumption of partiality. The prevailing rule, however, allows a person with preconceived notions about a case to serve as a juror if he can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

<u>Id.</u> at 204, 65 P.3d at 151 (brackets in original, citations, internal quotation marks, and ellipses omitted).

It is unclear whether Klein would have succeeded in dismissing Ka'alele for cause, where Ka'alele said she would have no problem judging the credibility of officers who testified and who expressed no bias in favor of law enforcement.

<u>Iuli</u> provides guidance. There, the supreme court held that a juror should have been passed for cause because he indicated during voir dire that his association with law enforcement would cause him to be biased:

> In response to the court's inquiry as to whether he would <u>try</u> to be fair and impartial, Carvalho replied that "it may be very difficult to be fair and impartial." In our view, Carvalho's agreement with the prosecutor that he could treat

police officers like any other witness, in itself, did not adequately rehabilitate him as a prospective juror. Carvalho's responses to defense counsel's inquiries demonstrated that he had preconceived notions and partiality toward victims and police officers due to his association with law enforcement. For example, as noted above, he stated, "All of my background says that the arrest wasn't made in vain." In response to defense counsel's question, "So as you sit here and you look at Mr. Iuli, you go, well, he must have done something right, he would be sitting in the chair there," Carvalho nodded his head in the affirmative.

Moreover, Carvalho explicitly stated that it would be a "tough call" as to whether he could be fair. His statement, "I'll try to be honest," was ambiguous at best and certainly does not expressly signify, as the prosecution implies, that he would attempt to be fair and impartial. Furthermore, Carvalho did not assure the trial court that he would base his decision solely upon the evidence. . . . Carvalho's statements during voir dire were express declarations of bias. Carvalho did not affirmatively state that he could render a fair and impartial verdict.

Id. at 204-05, 65 P.3d at 151-52 (record reference omitted).

In this case, Nakama stated that when she heard about the robbery, she and her husband were frightened and concerned that their daughters and other people in the neighborhood could be hurt. When asked if she would be able to decide the case solely on the evidence presented in court, she explicitly stated, "Truthfully, I think I would be more affected by the information I've read and my . . . feelings." Later, she stated, "[T]o be truthful, as a mother and a wife I have really strong feelings already. I feel show me the facts to prove that this man is innocent." Further, Nakama expressed hope that she could put aside her feelings, focus only on courtroom evidence, and be fair to Batalona was ambiguous at best and did not signify that she would attempt to be fair and impartial.

If Klein had succeeded in removing Nakama for cause, he would have preserved one of Batalona's peremptory challenges, which he could have used to remove another prospective juror. In State v. Kauhi, 86 Hawai'i 195, 197-98, 948 P.2d 1036, 1038-39 (1997), Kauhi challenged a prospective juror for cause on the ground that the juror was a deputy prosecuting attorney, employed by the same office that employed the attorney trying the case. The circuit court denied the challenge. Id. at 198, 948 P.2d at 1039. Kauhi used his last peremptory challenge to excuse the juror, then requested two additional peremptory challenges and

8

identified the jurors against whom he would utilize them. <u>Id.</u> The court denied the request. <u>Id.</u>

On appeal, the Hawai'i Supreme Court held that the circuit court abused its discretion in denying Kauhi's motion to dismiss the prosecutor-juror for cause, and the error prevented Kauhi from peremptorily challenging at least one of two additional prospective jurors; and, therefore, the trial court denied or impaired Kauhi's right to exercise his peremptory challenge. <u>Id.</u> at 200, 948 P.2d at 1041. The supreme court reversed the conviction and remanded the case for a new trial. <u>Id.</u>

"[T]he right to exercise a peremptory challenge is one of the most important of the rights secured to the accused in a criminal case and the denial or impairment of that right is reversible error not requiring a showing of prejudice." <u>Iuli</u>, 101 Hawai'i at 204, 65 P.3d at 151 (citation, internal quotation marks, ellipsis and brackets omitted). Here, if Klein used a peremptory challenge where he could have succeeded in dismissing Nakama for cause, he may have denied or impaired Batalona's right to exercise one of his peremptory challenges.

Based on the information before this court, Klein's basis for not moving to dismiss Nakama for cause is unclear. The State points out, that the transcript of the final day of jury selection, on July 26, 2000, is missing from the record on appeal. Further, in his Declaration, attached to the State's Supplemental Answer to Petition for Post-Conviction Relief (HRPP Rule 40), Klein merely states the following with regard to Batalona's ineffectiveness-of-counsel claims: "[I]t is my position that any . . . failure to pursue any course of action . . . did not substantially impair a meritorious claim or defense, and/or resulted from a strategic or tactical decision in the course of litigation." This statement does not provide an adequate explanation.

"If the record is unclear or void as to the basis for counsel's actions, counsel shall be given the opportunity to explain his or her actions in an appropriate proceeding before the trial court judge." <u>Briones</u>, 74 Haw. at 463, 848 P.2d at

977.  Because Batalona's argument on this point alleged facts that, if proven, would entitle him to relief, the circuit court erred by denying the Rule 40 Petition without a hearing on the issue.  See HRPP Rule 40(f).

### III.  GROUND 20(F)

In Ground 20(F), Batalona argued Klein was ineffective for failing to secure co-defendants Sean Matsunaga (**Matsunaga**) and Jacob Travis Hayme's (**Hayme**) attendance at trial in violation of Batalona's Right to Confrontation, where recordings of out-of-court statements by Matsunaga and Hayme, inculpating Batalona on the Attempted Murder 1 charge, were played at trial.

In State v. Fields, 115 Hawai'i 503, 513, 168 P.3d 955, 965 (2007), as amended on denial of reconsideration (Oct. 10, 2007), the Hawai'i Supreme Court held, citing to Crawford v. Washington, 541 U.S. 36 (2004), "To the extent that an out-of-court statement is testimonial in nature, such hearsay is admissible only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine him about the statement." (Citation and internal quotation marks omitted).  Among other things, plea allocutions are "undeniably testimonial under the sixth amendment."  Id.  And statements are "testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  Id. (quoting Davis v. Washington, 547 U.S. 813, 822 (2006) (format altered).

In this case, in a motion in limine filed on July 17, 2000, the State sought to exclude a recorded statement by Matsunaga, whom counsel for the State indicated would not be testifying at trial.  Counsel argued that the statement, that Matsunaga fired at Honolulu Police Officer Rosskopf (**Officer Rosskopf**), conflicted with Matsunaga's plea allocution[3] and, thus, was inherently untrustworthy and did not fit within any

---

[3]  At trial, counsel for State explained that Matsunaga gave the plea allocution in federal court on November 24, 1999, two days before he provided his recorded statement.  In the allocution, Matsunaga claimed Batalona fired numerous rounds at Officer Rosskopf.

hearsay exception.

Batalona opposed the motion in limine, arguing, among other things, that Matsunaga's recorded statement was relevant to show that Hayme and/or Matsunaga, not Batalona, shot at Officer Rosskopf.

Batalona argued that even if Matsunaga failed to testify at trial, his recorded statement was admissible pursuant to Hawaii Rules of Evidence (**HRE**) Rule 803(b)(8) (1993)[4] because Matsunaga made it pursuant to a police report, and Rule 804(b)(3) (1993)[5] because it was a statement against interest.

At a hearing on the State's motion in limine, on July 20, 2000, the circuit court ruled that, assuming Matsunaga and Hayme were not testifying, Matsunaga's recorded statement that he, not Batalona, shot at Officer Rosskopf, was admissible as long as Matsunaga's plea allocution stating the opposite was also introduced to call into question the trustworthiness of the recorded statement.

The circuit court orally ruled that Hayme's recorded statement, in which Hayme claimed Batalona shot at Officer

---

[4]  HRE Rule 803(b)(8) provides:

> (8)    Public records and reports.  Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

[5]  HRE Rule 804(b)(3) provides:

> (3)    Statement against interest.  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement[.]

11

Rosskopf, was admissible as a statement against interest, an exception to the prohibition against hearsay. Klein objected that Hayme's statement was exculpatory and therefore not a statement against interest, and did not fall under any other hearsay exception; however, the court did not alter its ruling.

On July 25, 2000, Batalona filed a supplemental motion in limine, in which he sought an order prohibiting the State from introducing any part of Matsunaga or Hayme's respective statements pertaining to anyone's actions but their own, on the ground that otherwise, the statements would be hearsay and in violation of Batalona's Sixth Amendment rights.

At trial, Klein objected to the admission of Matsunaga's recorded statement and plea allocution and Hayme's recorded statement on the ground that it would violate Batalona's Sixth Amendment rights. The circuit court orally ruled, "On the plea agreement and proffer from Matsunaga, there is no Sixth Amendment issue because the defense is calling him and you don't cross examine your own witness."

Klein introduced into evidence Exhibit 1, a redacted version of Matsunaga's recorded statement. The recording was played to the jury, but there appears to be no transcript of it in the record on appeal. Further, although the State submitted the recording or a transcript of it as State's Exhibit 160; there appears to be no copy the record.

The record on appeal does include transcripts of the portions of Hayme's and Matsunaga's respective recorded statements by counsels during closing arguments. The portions played indicated that in Hayme's recorded statement, he denied having fired his weapon at Officer Rosskopf.

With regard to Matsunaga's recorded statement, as the circuit court orally ruled, the statement could not have violated Batalona's Sixth Amendment rights because Batalona introduced it. On the other hand, Hayme's recorded statement was introduced by the State. Hayme's recorded statement was testimonial because it was given "to establish or prove past events potentially relevant to later criminal prosecution" of Batalona. Fields, 115 Hawai'i at 514, 168 P.3d at 966. Unless Hayme was unavailable, Batalona

had the right to cross-examine him at trial. Id. at 513, 168 P.3d at 965. It is unclear from the record if Hayme really was unavailable. Although he apparently refused to testify, there does not appear to be any evidence that the State made a good faith effort to secure his appearance at trial.

If Klein failed to subpoena Hayme, it may have resulted in the withdrawal of substantial impairment of a potentially meritorious defense because, as the State conceded, Hayme fired five bullets from his weapon during the robbery, and Batalona, through cross-examination, may have cast reasonable doubt on whether Hayme's shots were directed at Officer Rosskopf. Klein's Declaration does not adequately address his decision to not subpoena Hayme. "If the record is unclear or void as to the basis for counsel's actions, counsel shall be given the opportunity to explain his or her actions in an appropriate proceeding before the trial court judge." Briones, 74 Haw. at 463, 848 P.2d at 977. Therefore, the circuit court should have held a hearing on this point.

### IV. CONCLUSION

The July 21, 2015 "Findings of Fact, Conclusions of Law, and Order Denying Petition for Post-Conviction Relief Without a Hearing," entered in the Circuit Court of the First Circuit is vacated and this case is remanded for a hearing on Ground 1 and Ground 20(F) of the December 8, 2010 "Petition for Post-Conviction Relief." The circuit court's denial of a hearing on all other grounds contained in the "Petition for Post-Conviction Relief" is affirmed.

DATED: Honolulu, Hawai'i, October 18, 2016.

On the briefs:

Albert Batalona
Petitioner-Appellant pro se.

Brandon H. Ito
Deputy Prosecuting Attorney
City and County of Honolulu
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge

13